UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

        Plaintiff,

        –v–

Brandon Jones,

        Defendant.

16-cr-0553 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This criminal case arises out of the Defendant, Brandon Jones, allegedly impersonating an officer of an intergovernmental organization between the United States and United Nations and, in connection with this position, passing fraudulent documents to airlines, apartments, and electronics vendors stating that they will be reimbursed with government funds. Defendant has notified the Court and the Government under Federal Rule of Criminal Procedure 12.2(b) that it intends to provide evidence at trial in the form of expert testimony that the Defendant suffers from a delusional disorder that prevented him from forming the requisite knowledge and intent to commit the offenses with which he is charged. The Government moved to preclude this expert testimony. For the reasons set forth below, the Court grants in part and denies in part the Government's motion to preclude.

I.    **Background**

A.    **Alleged Offenses and Charges**

In July 2016, Brandon Jones (a/k/a "Brandon McGeer," a/k/a "Brandon Jones-McGeer") was charged in a Complaint with Impersonating an Officer or Employee of the United States in violation of 18 U.S.C. § 912 (Count One), Wire Fraud in violation of 18 U.S.C. § 1343 (Count

1

Two), Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count Three), and creating and passing Fictitious Financial Obligations, in violation of 18 U.S.C. § 514 (Count Four). *See* Complaint, Dkt. No. 1. Jones was subsequently indicted by a grand jury in the Southern District of New York on August 11, 2016. Indictment, Dkt. No. 6.

The Complaint alleges that from in or about November 2015[1] through at least July 2016, Jones falsely claimed to be the Commissioner of the "Office of the Commissioner, [a]n IGO," a nonexistent entity that was purportedly an intergovernmental organization including the United Nations and United States. Complaint at 3-4. In connection with this false title, Jones allegedly purchased thousands of dollars in electronics using fraudulent government purchase orders. Complaint at 5-6. He and alleged co-conspirators also procured over $100,000 in airline tickets using fraudulent "Government Travel Requests." Complaint at 6-7. Jones allegedly also contacted a salesperson at a long-term apartment rental facility in New York City in June 2016 stating that he wanted an apartment that would be used "for official and Governmental Business" and would be paid for by the Department of Treasury. Complaint at 7. In its motion to preclude, the Government further alleges that Jones also fraudulently secured monogrammed clothing, badges, and insignia for the Office of the Commissioner and a corporate apartment for which he owes more than $70,000 in rent. Mot. to Preclude, Dkt. No. 66, at 2.

On May 3, 2017, defense counsel provided the Court and Government with notice of its intent to introduce expert evidence at trial "relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt" under Federal Rule of Criminal Procedure 12.2(b). Exhibit A to Mot. to Preclude, Dkt. No. 66-1, at 1. Specifically, defense

---

[1] The Indictment alleges that the offenses began in February 2015 rather than November 2015, *see* Indictment at 1-3, but otherwise mirrors the allegations of the Complaint. The Court refers to the Complaint here due to its inclusion of more facts regarding Jones's alleged offenses.

counsel stated that it intended to call Dr. Sanford Drob to testify at trial. *See id.* Dr. Drob subsequently completed a report on the Defendant's mental health based on "interviews with Mr. Jones, a review of some of the relevant documents in this case, a review of Mr. Jones' MCC records, . . . and the results of administering the Rorschach Inkblot Method (RIM) test as well as the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) test." *Id.* at 2.

### B. Dr. Drob's Proposed Testimony

After reviewing Dr. Drob's report, the Court ordered the Defendant to provide a summary of the testimony Dr. Drob would provide if he were called as a witness. Order, Dkt. No. 59. The proposed testimony of Dr. Drob received by the Court concludes that Jones suffers from "delusional disorder, grandiose type, characterized by an intractable false set of beliefs regarding his educational and professional achievements and financial standing." Attachment to D.'s Email of Dec. 8, 2017 ("Proposed Testimony"), at 1. According to the proposed testimony, Jones suffers from non-bizarre-type delusions that "do not involve completely implausible and incomprehensible claims (such as having his organs replaced with the organs of a Martian)," but which are "not amenable to change in light of conflicting evidence." Proposed Testimony at 1. In particular, as relevant here, Dr. Drob states that Jones suffers from a delusion "that he is a full-time United Nations employee on the []human rights counsel, and in July 2016 celebrated eight years of employment at the UN." Proposed Testimony at 2. The proffered testimony further explains that the Defendant, like others suffering from delusional disorder, "is not 'lying' about these [delusions], but believes them himself and is therefore delusional" and will continue to believe these claims "[e]ven when confronted with evidence that disconfirms the validity of his assertions." Proposed Testimony at 2. Dr. Drob further states that the Defendant's "views about

3

the legitimacy of his organization and his role as the 'Commissioner' are extremely relevant to understanding his beliefs and intentions with respect to the charged conduct." Proposed Testimony at 2. The proposed testimony further notes that individuals who suffer from delusional disorders "typically function reasonably well in areas that are unrelated to their delusions," and that the Defendant similarly "can be perceived by others as a reasonably well functioning adult and professional." Proposed Testimony at 2.

The proposed testimony opines that Jones's delusions likely resulted from a combination of factors, including "a personal history of extreme physical and psychological abuse and trauma, which resulted in severe burns and scarring to his legs and feet, the presence of various psychological and medical conditions, including significant learning disabilities, a history of depression and Posttraumatic Stress Disorder, chronic infections and impaired mobility resulting from his burns," and other physical ailments. Proposed Testimony at 2-3. According to Dr. Drob, grandiose delusions are "often conditioned by a powerful, unconsciously driven need to compensate for severe deficits in self-esteem and the individual's perceived inadequacy of his or her actual life station," and as a result, Jones's delusions developed to compensate for his intellectual deficiencies and painful upbringing. Proposed Testimony at 2.

The proffered testimony provides several bases for Dr. Drob's medical opinion. It relies on two separate diagnoses of delusional disorder that Jones received at Kingsbrook Hospital and by the Bureau of Prisons. Proposed Testimony at 3. In support of Jones's claims of abuse, Dr. Drob relies on                    assessment                                supplied by counsel indicat[ing] that he was brought to              Hospital
suffering from dehydration, hyponatremia . . . , and extensive 2nd degree burns on his lower legs and torso." Proposed Testimony at 4. He also relies on

4

records diagnosing Jones with "various learning and emotional problems"

Proposed Testimony at 4.

Dr. Drob's testimony also relies on several tests that the doctor performed, including a Wechsler Adult Intelligence Scale-4th Edition test signifying that Jones's "capacity for both verbal and nonverbal reasoning is significantly compromised" and that his common sense and social judgment scores were "in the lowest 5th percentile." Proposed Testimony at 4. Dr. Drob also conducted an RBANS test, or Repeatable Battery of the Assessment of Neuropsychological Status, on which the Defendant "score[d] in the lowest 0.1 percentile in comparison to similarly aged peers, a finding that is highly suggestive of a very significant learning disorder." Proposed Testimony at 4-5. According to the proposed testimony, such cognitive deficiencies both "point to one source of Mr. Jones' extremely low self-esteem, which he has compensated for through a completely unrealistic account of his own educational and occupational accomplishments," and indicate "impairments in his memory and thinking that facilitate his distortions regarding these accomplishments." Proposed Testimony at 5. Similarly, the results of a Rorschach test administered to Jones indicated "severe deficits in reality testing that contribute to a failure in separating fantasy from reality." Proposed Testimony at 6. The proposed testimony concludes that Jones's history of trauma and significant cognitive deficiencies "facilitated the creation of a pathological fantasy life in which Mr. Jones converted his trauma and handicaps into a personal asset and presented himself to both himself and others as an extremely successful, philanthropic, and influential figure." Proposed Testimony at 6.

Dr. Drob would also testify that the tests performed on Jones strongly contradict any suggestion that the Defendant is malingering or lying about his delusions. The proposed

testimony states that indices internal to the RBANS "indicate that Mr. Jones made a concerted effort on testing and did not endeavor to malinger or exaggerate cognitive deficits." Proposed Testimony at 5. Likewise, on the Millon Clinical Axial Inventory, 3rd edition test administered to the Defendant, Jones "presented himself as healthy and well-functioning" despite the objective criteria demonstrating that he displayed "limited insight" and "naiveté about psychological matters and an effort to garner social approval." Proposed Testimony at 5. Dr. Drob's proposed testimony states that Jones "has made every effort to impress that he is not mentally ill and that he is indeed the highly successful individual he presents himself to be." Proposed Testimony at 6.

### C.     Motion to Preclude

On August 30, 2017, the Government filed a Motion to Preclude Dr. Drob from testifying at trial. *See* Mot. to Preclude. In its motion, the Government argues that Dr. Drob's testimony is inadmissible because it impermissibly puts forth an insanity defense in violation of the Insanity Defense Reform Act of 1984; because the testimony presents a risk of misleading the jury that substantially outweighs the testimony's probative value in violation of Federal Rule of Evidence 403; because the testimony is not relevant to an issue the jury will need to decide under Federal Rules of Evidence 401, 402, and 702; and that, even if some parts of the testimony are admitted, Jones's statements to Dr. Drob are inadmissible under Federal Rule of Evidence 703.

To assist the Court in deciding the motion, oral argument was held on November 22, 2017. Following that hearing, the Court has issued numerous orders for additional information from both parties. *See* Dkt. Nos. 55, 59, 62, 69. The Court has reviewed all of the information it has received from both parties on this issue.

### II.     Legal Standard

The Insanity Defense Reform Act of 1984 ("IDRA") states, in relevant part, that:

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a). It further mandates that "[t]he defendant has the burden of proving the defense of insanity by clear and convincing evidence." *Id.* § 17(b). In enacting the IDRA, Congress sought to place a number of limitations on a criminal defendant's ability to introduce mental health evidence, including: (1) the elimination of any form of legal excuse based on a defendant's lack of volitional control, (2) elimination of affirmative defenses such as "diminished capacity," "diminished responsibility," "mitigation," and "justification," (3) limitation on the use of expert psychological testimony on ultimate legal issues, (4) alteration of the burden of proof to require the defendant to prove the affirmative defense of insanity by clear and convincing evidence, and (5) creation of a special verdict of "not guilty by reason of insanity," which triggers federal civil commitment proceedings. *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990); *United States v. Sabir*, No. 05-cr-673 (LAP), 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007).

Although the IDRA restricts a criminal defendant's ability to utilize mental health evidence as an affirmative defense, courts have consistently held that "the IDRA does not preclude a defendant from submitting evidence of mental health for the purpose of negating the intent element of a crime." *United States v. Dupre*, 462 F.3d 131, 137 n.8 (2d Cir. 2006); *see also Cameron*, 907 F.2d at 1067; *United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987); *United States v. Dupre*, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004) (collecting cases), *aff'd* 462 F.3d 131. Relying on text, structure, legislative history, and the purposes of the IDRA, courts

have concluded that the IDRA "bar[s] only alternative 'affirmative defenses' that 'excuse' misconduct," but "not evidence that disproves an element of the crime itself." *Pohlot*, 827 F.2d at 897. In other words, the IDRA bars use of expert testimony to support an affirmative defense excusing the defendant's conduct because he either could not control his actions "because of a supposed psychiatric compulsion" or could not understand the wrongness of his actions because of an "inability or failure to engage in normal reflection." *Dupre*, 339 F. Supp. 2d at 541 (quoting *United States v. Worrell*, 313 F.3d 867, 873 (4th Cir. 2002)). However, the IDRA "does not preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *Dupre*, 462 F.3d at 137.

To ensure that mental health evidence is introduced for the permissible purpose of negating *mens rea* rather than as an affirmative defense to excuse the defendant's conduct, courts must satisfy themselves that the evidence "would, if believed, 'support a *legally acceptable* theory of lack of *mens rea*.'" *Dupre*, 339 F. Supp. 2d at 541 (quoting *Cameron*, 907 F.2d at 1067). Such evidence should be admitted only if there is "a *genuine link* between the proffered expert testimony and the issue of [*mens rea*.]." *Id.* (emphasis added). Put another way, "a defendant is required to demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove." *Sabir*, 2007 WL 1373184, at *5; *see also Cameron*, 907 F.2d at 1067 n.31 ("The proper focus should be on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case.").

Even if the mental health evidence *could* be offered for a legitimate purpose under the IDRA, the court must also determine whether the evidence's potential to "mislead the jury into

8

concluding[] that the defendant was temporarily insane, that the disease caused the defendant to commit the crime or otherwise impaired her ability to exert volitional control, or that the disease impaired the defendant's ability to reflect on the consequences of her conduct" substantially outweighs its probative value under Federal Rule of Evidence 403. *Dupre*, 339 F. Supp. 2d at 540-41. That is, if the risk that the jury will interpret the evidence to support an affirmative defense that is impermissible under the IDRA rather than to negate the *mens rea* element of the offense substantially outweighs the probative value of the evidence, it must be excluded. *See id.*; Fed. R. Evid. 403. Courts have cautioned that there are "special concerns for relevance and potential jury confusion in the case of expert testimony regarding mental disease evidence," and that, as a result, "psychiatric evidence must be weighed carefully." *Dupre*, 339 F. Supp. 2d at 540-41.

## III.  Discussion

### A.  Dr. Drob's Testimony Is Precluded as to Counts Two, Three, and Four

The expert testimony of Dr. Drob is precluded with respect to the charges of wire fraud, conspiracy to commit wire fraud, and creating and passing fictitious financial obligations because the Defendant has not demonstrated "a direct link" between Dr. Drob's expert opinion and the *mens rea* element of these offenses. *See Sabir*, 2007 WL 1373184, at *5.

All three of these offenses include as an element that the defendant acted with the intent to defraud. To be convicted of wire fraud, a defendant must be found to have "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343; *see also Dupre*, 339 F. Supp. 2d at 539 ("An essential element of [18 U.S.C. § 1343] is intent to defraud. The Government must prove that the defendant engaged or participated in a fraudulent scheme

with an understanding of its fraudulent or deceptive character and with an intention to be involved in the scheme and to help it succeed with a purpose of causing actual financial harm to another."). The offense of conspiracy to commit wire fraud incorporates this same statute and therefore includes an identical provision. *See* 18 U.S.C. § 1349. Finally, the offense of tendering fictitious obligations must be conducted "with the intent to defraud." *Id.* § 514(a). "[G]ood faith constitutes a complete defense to charges of wire fraud." *Dupre*, 462 F.3d at 139. As a result, "[a] defendant's honest belief in the truth of representations made by her is a complete defense [to crimes requiring fraudulent intent], however inaccurate the statements may turn out to be." *Dupre*, 339 F. Supp. 2d at 540.

Here, the Defendant has not presented a direct link between his alleged delusional disorder and a lack of intent to defraud when he constructed false purchase orders and other financial documents and then used them to obtain goods and services. Dr. Drob's proposed testimony discusses generally that Jones suffers from delusions regarding his employment as the "Commissioner" of a United Nations commission. Proposed Testimony at 1-2. However, nowhere in the proffered testimony does Dr. Drob provide evidence that the Defendant's delusional disorder in any way led him to believe that the companies to whom he distributed self-made purchase orders would actually be reimbursed by the IGO for which he worked. The closest the proposed testimony comes to making such a claim is that Jones suffers "intractable false set of beliefs regarding," among other topics, his "financial standing." Proposed Testimony at 1. Such a generalized statement does not provide the "genuine link," *Dupre*, 339 F. Supp. 2d at 541, required between Jones's supposed delusional disorder and the intent to defraud element of Counts II through IV. The Court specifically identified this potential defect in Dr. Drob's testimony at oral argument, asking "Did Dr. Drob explore what Mr. Jones understood as who

was going to pay the bills?" Tr. of Nov. 22, 2017 Proceedings, at 49. Defense counsel could not

identify anything in the report that established a nexus between Dr. Drob's diagnosis and the

requisite *mens rea* to defraud. *See* Tr. of Nov. 22, 2017 Proceedings at 50-51 ("I don't think it's

in the report, to be candid, but I don't think it matters and I think that it's not something that Dr.

Drob has to put in the report . . . ."). And nothing in the subsequently submitted proposed

testimony would allow the jury to conclude that such a nexus exists.

     As a result, the Court concludes that Dr. Drob's testimony lacks "a genuine link between

the proffered expert testimony and" the required *mens rea* of an intent to defraud. *Dupre*, 339 F.

Supp. 2d at 541. The testimony is thus precluded with respect to Counts Two, Three, and Four.

## B.    Dr. Drob's Testimony Is Not Precluded as to Count One

### 1.    The Proposed Expert Testimony Satisfies a Permissible Purpose Under the IDRA

     The Court concludes that Doctor Drob's testimony is not precluded by the IDRA with

respect to the charge of impersonating an officer or employee of the United States. The text of

18 U.S.C. § 912 states:

> Whoever falsely assumes or pretends to be an officer or employee acting under the
> authority of the United States or any department, agency or office thereof, and acts
> as such, or in such pretended character demands or obtains any money, paper,
> document, or thing of value, shall be fined under this title or imprisoned not more
> than three years, or both.

In order to convict a defendant of impersonating an officer or employee of the United States

under 18 U.S.C. § 912, the Government must prove beyond a reasonable doubt that the

defendant knew that he was not, in fact, an officer or employee of the United States. *See, e.g.*, 2

Kevin F. O'Malley et al., Federal Jury Practice and Instructions: Criminal § 38.04 (6th ed. 2018)

("The term 'falsely assumes or pretends' means knowingly or consciously to hold out the

appearance of being, to impersonate, to make believe, to counterfeit."); 2 Leonard B. Sand,

Modern Federal Jury Instructions § 34-7 (2003) (requiring the government to prove beyond a reasonable doubt that the defendant "acted knowingly and willfully" in impersonating a U.S. officer); Jury Instruction, *United States v. Lopez*, 99-cr-294 (DLC) (Sept. 9, 1999) (requiring that defendant committed the offense "knowingly and willfully"). In addition, both parties agree that in this case, the Government would be required to prove that the Defendant knowingly and willfully pretended to be an officer or employee of the United States. *See* Gov. Letter of Dec. 20, 2017, at 1 (listing as an element of Count One that "the defendant knew that [his pretense] was false" (quoting *United States v. Willis*, 527 F. App'x 376, 378 (6th Cir. 2013)); D. Letter of Dec. 27, 2017, at 2 ("[T]he Government must prove that the defendant acted knowingly, willfully and that the defendant 'pretended' to be an officer or employee of the United States.").

The Court concludes that Doctor Drob's proposed testimony, if believed by the jury, could negate the knowing and willful *mens rea* element of the offense. Doctor Drob describes the Defendant as having "grandiose delusions, including about his role as 'the commissioner'" of a United Nations council. Proposed Testimony at 1-2. He would testify that these delusions are intractable – "[e]ven when confronted with evidence that disconfirms the validity of his assertions, given his delusional state with regard to these issues, he ignores the facts." Proposed Testimony at 2. Moreover, the results of Jones's Rorschach test demonstrate "severe deficits in reality testing that contribute to a failure in separating fantasy from reality." Proposed Testimony at 6. As a result, the jury could conclude based on this testimony that Jones's delusions of working for the United Nations as a "Commissioner" were so intense that he genuinely believed them when he held himself out as such. Under these circumstances, the jury could conclude that he did not knowingly pretend to be a U.S. officer and did not act with the requisite *mens rea* to convict him under 18 U.S.C. § 912. The Government seemingly agrees

12

with this conclusion, stating in a letter to the Court that Dr. Drob's proposed testimony "arguably rebuts the Government's proof that the defendant's impersonation of a government official was 'knowing and willful,' because he cannot have willfully 'pretended' to impersonate a government official if he truly believed he in fact was a government official." Gov. Letter of Dec. 20, 2017, at 1.

### 2. The Proposed Expert Testimony Is Consistent with the Federal Rules of Evidence

The Government raises several additional grounds on which to preclude Dr. Drob's proposed testimony even if it could support a legally permissible theory under the IDRA. For the reasons explained below, the Court disagrees with the Government's arguments.

### a. Rule 703

The Government argues that any testimony given by Dr. Drob must be limited under Federal Rule of Evidence 703 "to the extent Dr. Drob's proposed testimony consists of the defendant's impermissible hearsay about the facts of the case and his allegations of abuse, or speculation as to his credibility or state of mind." Mot. to Preclude at 14. The Court finds that aspects of Dr. Drob's proposed testimony discussing Jones's history of abuse is relevant to Dr. Drob's diagnosis and that the proffered testimony does not describe the abuse in unnecessary length or detail. As a result, the Court concludes that the probative value of Dr. Drob's proposed testimony discussing Jones's prior abuse substantially outweighs any prejudicial effect, and it is thus admissible under Federal Rule of Evidence 703.

Rule 703 states that an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," and that such facts "need not be admissible for the opinion to be admitted" as long as those facts are the type on which experts in the field would reasonably rely. Fed. R. Evid. 703. The rule further states, however, that "if the

facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

As a result, when a defense expert relies on statements made by the defendant or other parties – evidence which is inadmissible hearsay – in reaching his conclusions, "[t]he expert may not . . . simply transmit that hearsay to the jury. Instead, the expert must form his own opinions by 'applying his extensive experience and a reliable methodology' to the inadmissible materials." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (citation omitted) (quoting *United States v. Dukagjini*, 326 F.3d 45, 57 (2d Cir. 2003)).

An expert witness also "may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony." *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988). Expert witnesses are barred from this type of testimony, first, because "credibility of witnesses is exclusively for the determination by the jury." *Id.* Second, such testimony "is improper . . . because it describes lay matters which a jury is capable of understanding and deciding without the expert's help." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (alteration in original) (citation omitted). While experts may not directly testify as to another witness's credibility, they "may be permitted to testify to relevant physical or mental conditions." *Scop*, 846 F.2d at 142.

The Court finds that the information contained in the proffered testimony about the abuse          is highly probative of whether Jones suffers from a delusional disorder. In his proposed testimony, Dr. Drob identifies          abuse as a significant causal factor of Jones's grandiose delusions, stating that "Mr. Jones' history of trauma has conditioned his adult psychological status." Proposed Testimony at 3. He avers that grandiose delusions "are often

conditioned by a powerful, unconsciously driven need to compensate for severe deficits in self-esteem and the individual's perceived inadequacy," and that Jones's delusions in particular "have been conditioned by a personal history of extreme physical and psychological abuse and trauma, which resulted in severe burns and scarring to his legs and feet," as well as "a history of depression and Posttraumatic Stress Disorder, chronic infections and impaired mobility resulting from his burns." Proposed Testimony at 2-3. Dr. Drob further suggests that the physical and psychological effects of the abuse                    "impaired his adaptive functioning" and caused him to "create[] and act[] out a fantasy life in which he was the 'commissioner' of an important charitable organization." Proposed Testimony at 3. The proffered                    description of the scope of that abuse, is thus relevant to whether Jones suffers from a delusional disorder because it provides an explanation for the cause of that disorder. Without knowing that Jones had suffered traumatic abuse, the jury would be left without an explanation as to why or how Jones would have developed a fantasy world in which he was the commissioner of an intergovernmental organization working on human rights issues. *See* Proposed Testimony at 3, 6. As a result, the probative value of these statements in helping the jury evaluate Dr. Drob's opinion is substantial.

The Court next finds that the risk of prejudicing the Government with this evidence is relatively low. The proposed testimony of Dr. Drob provides a limited discussion of the abuse suffered by the Defendant. The proposed testimony, relying on "hospital records," states that Jones was abused                    which resulted in the severe burns and scarring to his lower thighs, legs and feet." Proposed Testimony at 3. It further identifies that Jones suffered from depression, posttraumatic stress disorder, and "chronic infections and

impaired mobility" as a result of his burns.  Proposed Testimony at 3.

Proposed Testimony at 4.  This
testimony does not provide unnecessary or explosive details of the abuse suffered by the
Defendant; it merely identifies the nature of abuse that occurred and the effects that resulted, all
of which, according to the proposed testimony, is corroborated by contemporaneous reports that
Dr. Drob has reviewed.  *See* Proposed Testimony at 3-4.  Because Dr. Drob's proposed
testimony regarding the            abuse suffered by the Defendant is limited to identifying the
nature of the abuse and its resulting physical and psychological effects on Jones without
providing extensive details, the Court concludes that the testimony's possible prejudicial effect is
low.  Because the proposed testimony's discussion of the Defendant's            abuse is highly
relevant to his alleged delusional disorder and has a low prejudicial effect, the Court concludes
that the probative value of the testimony substantially outweighs its possible prejudicial effect.
The proposed testimony's identification of the nature and effects of            abuse suffered by
the Defendant is thus admissible under Rule 703.

The Government also argues that Dr. Drob cannot testify as to "whether Jones truly
believes he was in fact abused, whether Jones believes he is in charge of this United Nations-
affiliated organization, or whether Jones believed he had the authority to act on behalf of that
organization in dealing with third parties" because such testimony would relate to "Jones'
credibility and state of mind; as such, they are the province of the jury, not the expert."  Mot. to
Preclude at 15.

Second Circuit precedent provides guidance here. In *Scop*, the Second Circuit held that an expert, like any other witness, may not opine about the "credibility of the *testimony* of other witnesses at trial." 846 F.2d at 142 (emphasis added). The court then clarified that "even expert witnesses possessed of medical knowledge and skills that relate directly to credibility may not state an opinion as to whether another witness is credible, *although such witnesses may be permitted to testify to relevant* physical or *mental conditions.*" *Id.* (emphasis added) (citation omitted); *see also United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993) ("[The Federal Rules of Evidence] do[] not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." (quoting *United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992))). As a result, Dr. Drob may not testify at trial as to whether he found the testimony of Jones (or any other witness) credible. He may testify that, in his expert opinion, Jones suffers from a delusional disorder that may be linked to beliefs that he is in charge of a United Nations-affiliated organization. Dr. Drob's testimony may not go so far as to opine on an ultimate legal conclusion such as whether the Defendant acted with an intent to defraud or knowingly and willfully impersonated an officer of the United States. Experts are barred from testifying to such legal conclusions under the Federal Rules of Evidence and a long line of precedents. *See Scop*, 846 F.2d at 140 (collecting cases); *see also* Fed. R. Evid. 704 advisory committee's note to 1978 proposed rules. The line between proper expert testimony and testimony that improperly opines on an ultimate legal issue must be carefully guarded. However, the Government has not argued that Dr. Drob's testimony is likely to reach such legal conclusions, and the Court will not permit him to so testify.

For the reasons outlined above, Rule 703 does not require any of Dr. Drob's testimony to be limited.

### b.    Rules 401, 402, and 702

The Government briefly asserts that some statements in the proposed testimony should be excluded under Federal Rules of Evidence 401, 402, and 702 because they "do not aid the trier of fact in determining any issue in dispute in this case." Mot. to Preclude at 11. The Court does not agree.

In general, evidence must be relevant to an issue at trial to be admissible. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he definition of relevance under Fed. R. Evid. 401 is very broad," *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014), and as a result, the standard for relevance is "very low," *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008). "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006).

Expert testimony must not only meet this relevance requirement, but must additionally satisfy the requirements of Rule 702, under which expert testimony must be based on specialized knowledge that will help the jury understand a material fact at trial.[2] *See* Fed. R. Evid. 702. A court must act as "gatekeeper" and determine that the proposed testimony is both relevant and

---

[2] The entirety of Rule 702 states:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

While all of the requirements of Rule 702 must be satisfied for expert testimony to be admissible, the Government only challenges the first requirement in this case. *See* Mot. to Preclude at 11-12.

reliable before it can be admitted at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90, 597 (1993). The court makes this determination "in accordance with 'the liberal admissibility standards of the federal rules and recognize[s] that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" *United States v. Morgan*, 53 F. Supp. 3d 732, 740 (S.D.N.Y. 2014) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)). As a result, "the rejection of expert testimony [under Rule 702] is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

The Court finds that the testimony in Dr. Drob's proposed testimony satisfies the low bar of relevance and is admissible under Rule 702 because it is based on specialized knowledge that will help the jury determine a fact at issue in the case. The Government points to several statements in Dr. Drob's report that it interprets as inadmissible under these rules:

> For instance, while Dr. Drob opines that the Rorschach results indicate "significant interpersonal and social deficits," and "avoidant cognitive style," and "considerable deficits in self-esteem," none of these conclusions bears on Jones' specific intent in this case.[3]

Mot. to Preclude at 12. Statements about Jones's social deficits, cognitive deficits, and low self-esteem may be relevant to Dr. Drob's diagnosis because he identifies these as contributing causes of Jones's delusional disorder. Dr. Drob states that delusional disorder often results from "severe deficits in self-esteem and . . . perceived inadequacy." Proposed Testimony at 2. As a result, whether Jones suffers from low self-esteem is probative of whether and why Jones

---

[3] Similar statements to those quoted from Dr. Drob's report are found in Dr. Drob's proposed testimony. The Government identifies other statements from Dr. Drob's report that it finds irrelevant, such as the statement that Jones has "difficulty managing his emotions and is at considerable risk for being flooded by affects that he cannot cope with or tolerate." Mot. to Preclude at 12. However, no statement to that effect is contained in the proposed testimony Dr. Drob would give at trial. Because the Defendant has declined to elicit testimony about that topic, the Court need not rule on its relevance.

developed a delusional disorder. Similarly, the defense proffers that Dr. Drob would state at trial that Jones's "very significant learning disorder" is "one source of Mr. Jones' extremely low self-esteem" and "facilitate[s] his distortions regarding [his] accomplishments." Proposed Testimony at 5. Evidence of cognitive deficiencies may thus be probative of why Jones developed a delusional disorder and how he continues to maintain his delusions despite contradictory evidence.

As a result, the Court concludes that Dr. Drob's proposed testimony is relevant and satisfies Rule 702 and is therefore admissible.

### 3. A Jury Instruction on the Affirmative Defense of Insanity Shall Be Given if Dr. Drob Testifies

While the Court concludes that Dr. Drob's proposed testimony *could* negate the *mens rea* element of the offense of impersonating an officer of the United States, the Court recognizes that "psychiatric evidence to negate *mens rea* 'may easily slide into wider usage that opens up the jury to theories of defenses more akin to justification.'" *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996) (quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)). In this case, negating *mens rea* appears critical to the defense regarding the charge of impersonating a government official. At the same time, the Court is cognizant of the importance of confining the defense to only theories that are permissible under federal law. In order to balance these weighty considerations, the Court asked the parties to brief whether it would be appropriate for the Court to take the approach approved by the Eleventh Circuit in *Westcott*. *See* Order, Dkt. No. 59. Both parties agreed that the approach taken in *Westcott* would be appropriate to resolve the issue in this case. *See* Gov. Letter, Dkt. No. 61, at 1 ("The Government further agrees that the same approach [as was taken in *Westcott*] would be appropriate here."); D. Letter, Dkt. No. 64, at 1-2 ("[W]e do not believe it would be an abuse of

20

this Court's discretion to adopt the *Westcott* approach . . . ."). As a result, the Court intends to adopt that approach.

In *Westcott*, a criminal defendant was charged with falsely representing himself to be an agent of the U.S. Secret Service in violation of 18 U.S.C. § 912. *Westcott*, 83 F.3d at 1356. The defendant sought to introduce testimony that because of his bipolar disorder, he perceived himself as a government official even though he was not one. *See id.* at 1356-57. The district court determined that this evidence could constitute evidence of insanity under the IDRA and that "if defendant introduced [the psychiatric expert's] testimony, the court would instruct the jury regarding the affirmative defense of insanity." *Id.* at 1357. The Eleventh Circuit affirmed this decision but emphasized that there was no indication "that the district court intended to give a jury charge which prevented the jury from considering evidence of mental abnormality in determining whether the state had proven its case." *Id.* at 1358. The Court of Appeals described the difference between legally permissible evidence and legally impermissible evidence under the IDRA:

> Psychiatric evidence is admissible to negate *mens rea* when the evidence focuses on the defendant's specific state of mind at the time the offense was committed. Evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea*. While the two may be logically related, only the latter is admissible to negate the *mens rea* element of an offense.

*Id.* (citations omitted). It then reasoned that the proposed expert's testimony included both admissible and inadmissible statements. On the one hand, the expert "stated that defendant actually 'believed himself to be a Secret Service agent' and truly believed the representations he made which form the basis of the charges," which "constitutes evidence admissible to negate the *mens rea* element of the charged crime." *Id.* On the other hand, the expert also "testified that defendant's 'mental condition was such that he could not form the intent' required for the

21

charged crime," and that this mental condition "also caused Defendant to meet the test for insanity, as defined by the Insanity Defense Reform Act." *Id.* at 1358-59. The Eleventh Circuit thus held that it was not an abuse of discretion for the district court to allow the defendant to use expert testimony to negate the *mens rea* element of the crime but also instruct the jury about the affirmative defense of insanity because "admitting [the expert's] testimony solely as *mens rea* evidence would allow defendant to present insanity defense evidence while avoiding the burden of proof mandated by" the IDRA. *Id.* at 1359.

Based on the representations of the parties and the Eleventh Circuit's analysis in *Westcott*, the Court intends to employ the same approach in this case. Dr. Drob's proposed testimony, if believed, could negate the *mens rea* element of Count One. However, a juror could also interpret the proposed testimony as evidence that the Defendant lacked the capacity to form the requisite *mens rea* for any of the Counts for much the same reason as *Westcott*. As a result, Defendant shall be allowed to present Dr. Drob's testimony as it relates to the offense charged in Count One, but if he chooses to present such evidence, the Court intends to also give an instruction on the affirmative defense of insanity.

## V.    Conclusion

The motion to preclude is granted as Dr. Drob's proposed testimony relates to Counts Two, Three, and Four of the Indictment. The motion to preclude is denied as Dr. Drob's proposed testimony relates to Count One of the Indictment. If the Defendant chooses to call Dr. Drob as a witness at trial, the Defendant will be allowed to argue that the evidence negates the *mens rea* element of Count One, but the Court will also instruct the jury on the affirmative defense of insanity. The parties will submit proposed instructions that effectuate the conclusions stated above by February 14, 2018. By February 14, 2018, the parties shall also provide the

Court with proposed redactions to this Memorandum Opinion and Order so that, if limited redactions are appropriate, a redacted version may be filed publicly.

SO ORDERED.

Dated: February 2, 2018
New York, New York

ALISON J. NATHAN
United States District Judge